IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

**BRAD K. EDMONDS, # 370076**    *

    **Petitioner,**    *

v    *    Civil Case No.: GJH-15-2130

**RICHARD DOVEY,**[1] *et al.*    *

    **Respondents.**    *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Brad Edmonds seeks habeas corpus relief pursuant to 28 U.S.C. § 2254, attacking, on Sixth Amendment grounds, the constitutionality of his 2011 convictions in the Circuit Court for Montgomery County.[2] ECF No. 1. Respondents' Answer was filed on November 18, 2015. ECF No. 14. Edmonds has filed replies,[3] along with a motion for immediate decision, release from custody, and a request for an evidentiary hearing. ECF Nos. 16, 20, 22, 25, 26, 27, & 29-31. In light of Edmonds' numerous supplemental petitions, Respondents were directed to respond to his Fourth Amendment claim involving the legality of the GPS device placed on his vehicle. ECF No. 32. Respondents filed a supplemental answer and Edmonds filed replies. ECF Nos. 34-36, & 41. This matter has been fully briefed. Upon review, the Court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2016); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000)

---

[1] Edmonds is currently housed at the Maryland Correctional Training Center in Hagerstown. The docket shall be modified to substitute the name of Richard Dovey as the proper Warden Respondent.

[2] Prior to the filing of Respondents' answer, Edmonds filed three separate supplemental petitions containing additional legal arguments in support of his Fourth and Sixth Amendment arguments. ECF Nos. 2, 7, & 9.

[3] In addition to his replies, Edmonds has filed several supplemental documents, containing alleged copies of his self-represented filings in his state post-conviction proceeding, a trial transcript filed in state court, as well as a statement of probable cause. All documents have been examined by the Court. *See* ECF Nos. 17, 18, 21, & 23.

1

(petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For reasons to follow, Edmond's Petition of habeas corpus is denied.

I. BACKGROUND

On March 21 and 22, 2011, Edmonds was tried by a jury in the Circuit Court for Montgomery County. ECF Nos. 1–5. He was convicted of first-degree burglary, possession of burglar's tools, theft, breaking and entering a motor vehicle, and rogue and vagabond. The Court of Special Appeals of Maryland summarized the facts revealed at trial as follows:

> Prior to the events giving rise to the present case, Edmonds had been suspected by the Prince William County and Fairfax County police departments in a series of burglaries. As part of their on-going investigation, these agencies covertly placed a GPS monitor on his automobile. In the early hours of November 17, 2010, the Virginia police realized that the vehicle was being driven into Montgomery County. They alerted the Montgomery County Police Department. . . .
>
> At some point between midnight and 1 AM on November 17, 2010, members of the Montgomery County Police Department's Special Assignment Team conducted surveillance on a dark blue Oldsmobile vehicle in the vicinity of Lake Potomac Drive. . . . They observed Edmonds, dressed in black and wearing a black mask and gloves, exit his vehicle around 1:00 AM. . . . The officers were about thirty to forty feet from Edmonds when observing him. . . . The two officers saw Edmonds walk onto the driveway of 11740 Lake Potomac Drive, they then heard glass shattering, and observed Edmonds reach into a silver car and remove something from that vehicle. Then, Edmonds reached into a maroon vehicle and removed something from that vehicle. Edmonds proceeded into the backyard of 11740 Lake Potomac Drive. The officers lost sight of Edmonds, and then inspected the damage Edmonds had made to the cars.
>
> [The two officers] then proceeded to 11720 Lake Potomac Drive where they discovered Edmonds's car parked behind the residence. The two waited in a wooded area, about thirty to forty feet from the car; Edmonds arrived at the car a few minutes later. Edmonds opened the trunk and placed items inside, including some of the clothing he was wearing at the time. He then removed his mask, and placed it behind the driver's seat. Using night vision equipment, [one officer] saw Edmonds's face as he removed his mask. Edmonds then drove away from the scene in his car. . . .
>
> Edmonds was apprehended later that night without incident . . . . Edmonds was wearing dark jeans, a dark shirt, and dark jacket at the time he was

2

apprehended. Edmonds's vehicle was searched; a ski mask was recovered behind the driver's seat, and a screwdriver, wet gloves, Maglite-type flashlights, and plyers were recovered from the trunk.

ECF No. 14-9 at 2–5.[4]

Trial commenced on March 21, 2011. After discussion with Judge Rubin regarding severance of a criminal count and the suppression of evidence related to the stop of Edmonds' car, counsel proceeded to opening statement. ECF No. 14-2 at 5–26. The jury then heard testimony from members of the Rockville Special Assignment Team (SAT), which performs covert surveillance on street crimes, and citizens whose automobiles and property were broken into. *Id.* at 27–137.

At the close of the State's case, Defense counsel Ronald Gottlieb moved for acquittal on each count based on the sufficiency of the evidence. The requests were denied by Judge Rubin. *Id*. at 82-88. The State rested its case. The defense produced no witnesses. After listening to instructions and closing arguments the jury found Edmonds guilty of first-degree burglary, possession of burglary tools, theft over $1,000.00 to under $10,000.00, and rogue and vagabond. He was acquitted of other counts of rogue and vagabond and of theft under $1,000.00. *Id*. at 136-140.

At a July 5, 2011 hearing, Edmonds moved for a new trial, alleging that he was not provided full discovery and that evidence was planted by police. The motion was denied by Judge Rubin who proceeded to sentencing. Edmonds was sentenced to a term of twenty years incarceration as to the burglary charge, a consecutive three years as to the possession of burglar's tools charge, an eight-year term as to the theft charge, to be served consecutive to the burglary and possession charges, and a two-year sentence as to the rogue and vagabond charge,

---
[4] All citations to the docket reference the electronic pagination.

consecutive to the previous three charges. A cumulative 33 years was imposed on Edmonds. ECF No. 14-5.

Represented by counsel, Edmonds raised the following claims before the Court of Special Appeals of Maryland:

> I. The trial court erred in failing to merge Edmonds's convictions on possession of burglary tools into first-degree burglary and the rogue and vagabond conviction into theft; and
>
> II. The evidence was legally insufficient to support Edmonds's conviction of possession of burglar's tools.

ECF No. 14-6.

On or about September 19, 2012, Edmonds filed a self-represented supplemental brief raising several issues, primarily attacking the police's placement of a global positioning system ("GPS") locator on his vehicle. He additionally contended that the Montgomery County Police Department used information from the GPS unit, evidence was illegally seized by police officers, and all of Edmonds' sentences and convictions were illegal due to the insufficiency of the evidence. ECF No. 14-8. The Court of Special Appeals did not accept this supplemental brief, as Edmonds was represented by counsel on direct appeal.

On November 30, 2012, while his direct appeal was pending, Edmonds filed a self-represented post-conviction petition in the circuit court. The petition was supplemented by counsel and by Edmonds. ECF No. 14-10. A hearing on the petition was held on May 8, 2014. As supplemented and litigated, Edmonds argued that his trial counsel, Ronald Gottlieb, was ineffective for failing to file a pre-trial motion to suppress evidence that was based on the government's unlawful placement of the GPS locator on his vehicle. ECF No. 14-11. On August 18, 2014, Circuit Court Judge David Boynton denied post-conviction relief. ECF No. 14-11.

Edmond's application for leave to appeal the post-conviction ruling was summarily denied by the Court of Special Appeals of Maryland on July 7, 2015. ECF No. 14-12; ECF No. 14-13.

In the instant Petition, Edmonds argues that his trial counsel was ineffective for failing to file a motion to suppress evidence based on the government's illegal placement of a GPS locator on his vehicle. ECF No. 1. In Supplemental Petitions, Edmonds raises a Fourth Amendment claim regarding the installation of a GPS locator device on his vehicle by Fairfax County, Virginia police. See ECF Nos. 16, 18, 20, 25–27, & 29.

## II. STANDARD OF REVIEW

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* 134 S.Ct 1697, 1702 (2014), quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement."); *Virginia v. LeBlanc*, 137 S.Ct. 1726, 1728 (2017).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. 86, 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Rather, that application must be objectively unreasonable." *Id*. Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 785 (internal quotation marks omitted). Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* 599 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where

the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id*. at 379.

## III. DISCUSSION

### A. Procedural Default

A petitioner's claim may be procedurally defaulted where he has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing timely to note an appeal. *See Coleman v. Thompson*, 501 U. S. 722, 749–50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489–91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post- conviction relief). A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999). As the United States Court of Appeals for the Fourth Circuit has explained:

> If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim. *See Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id*. at 735 n.1.

7

*Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits; or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is actually innocent.[5] *See Murray*, 477 U.S. at 495–96; *Breard*, 134 F.3d at 620. "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Breard,* 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488) (alteration in original). Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U. S. 298, 314 (1995). A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer "available" to him. *See* 28 U.S.C. § 2254(b); *Engle v. Isaac*, 456 U.S. 107, 125–126, n. 28 (1982).

To the extent that Edmonds is raising a Fourth Amendment challenge to his convictions based upon the use of the GPS locator placed on his vehicle without a warrant, this claim is procedurally defaulted. Edmonds did not present a direct Fourth Amendment challenge to the GPS tracking device of his car at trial or on direct appeal; rather, it was raised in terms of a Sixth Amendment ineffective assistance of counsel claim on post-conviction review. His failure to

---

[5] Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."). Petitioners who wish to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted the petitioner in light of the new evidence. *See Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006).

8

litigate an individual Fourth Amendment claim renders the ground procedurally defaulted. Even were the court to examine the claim, however, it would find it to be without merit.

The law concerning Fourth Amendment claims in federal habeas corpus proceedings is well established. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976) (footnotes omitted). In applying *Stone*, the Fourth Circuit has concluded that:

> [A] district court, when faced with allegations presenting Fourth Amendment claims, should, under the rule in *Stone v. Powell, supra*, first inquire as to whether or not the petitioner was afforded an opportunity to raise his Fourth Amendment claims under the then existing state practice. This may be determined, at least in this Circuit, from the relevant state statutes, the applicable state court decisions, and from judicial notice of state practice by the district court. Second,…when the district court has made the 'opportunity' inquiry, it need not inquire further into the merits of the petitioner's case, when applying *Stone v. Powell, supra*, unless the prisoner alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired.

*Doleman v. Muncy*, 579 F.2d 1258, 1265 (4th Cir. 1978).

Edmonds clearly had a full and fair opportunity to litigate the legality of the warrantless search at trial and on direct appeal in the Maryland courts. He was not impaired from challenging the legality of the GPS device placement on his Oldsmobile. There was an adequate process available to him, including suppression motions, a related hearing, and the State's appellate process. The fact that he did not take advantage of those opportunities is of no moment. Again,

9

the process was available to him. Thus, under *Stone*, his Fourth Amendment claim is barred from consideration here.[6]

### B. Ineffective Assistance of Counsel

When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The second prong requires the court to consider whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id*. at 696. Although "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," it is equally true that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. at 690–91. Where circumstances are such that counsel should conduct further investigation to determine "whether the best strategy instead would be to jettison [a chosen] argument so as to focus on other, more promising issues," failure to conduct further investigation can amount to constitutionally deficient assistance. *See Rompilla v. Beard*, 545 U.S. 374, 395 (2005) (O'Connor, J., concurring).

Whether retained or appointed, defense attorneys do not have infinite amounts of money and time with which to substantially investigate and pursue all plausible lines of defense, nor is

---

[6] In his post-conviction ruling, Judge Boynton intimated that a Fourth Amendment claim regarding law enforcement's use of a GPS would not survive in light of prevailing Supreme Court precedent at the time which "permitted the tracking of a vehicle by means of a mechanical device on public roadways." ECF No. 14-11 at 11

such conduct realistic or constitutionally mandated. *See Washington v. Watkins*, 655 F.2d 1346, 1356 (5th Cir. 1981) ("counsel for a criminal defendant is not required to pursue every path until it bears fruit or until all conceivable hope withers.") (citation omitted). The fact that counsel could have conducted a more thorough investigation that might have borne fruit does not establish that the attorney's performance was outside the wide range of reasonably effective assistance. *See Burger v. Kemp*, 483 U.S. 776, 794–95 (1987). Counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment; the burden to show that counsel's performance was deficient rests squarely on the defendant. *See Burt v. Titlow*, 571 U.S. 12, 22–23 (2013).

Absent clear and convincing evidence to the contrary, a claim that counsel's decision was premised on trial strategy cannot be disturbed. *See Evans v. Thompson*, 881 F.2d 117, 125 (4th Cir. 1989). A defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). "There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington*, 562 U.S. at 109 (internal quotation marks and citation omitted). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* at 105 (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

A showing of prejudice requires that 1) counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable, and 2) there was a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceedings would have been different. *See Strickland*, 466 U.S. at 687, 694. "The benchmark [of an ineffective assistance claim] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. A determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *Strickland*, 466 U.S. at 697. Using this framework, Edmonds' claim of ineffective assistance of counsel will be considered.

The gravamen of Edmonds' claim is that his trial attorney was ineffective for failing to move to suppress evidence obtained through a warrantless placement of a GPS system on his vehicle in light of the Supreme Court's decision in *United States v. Jones*, 565 U.S. 400 (2012), which held that evidence obtained from the Government's use of a warrantless GPS device violated the Fourth Amendment. The state post-conviction court rejected this claim finding:

> Though the police conduct may have run afoul of the Fourth Amendment in that it constituted a search without a warrant, at the time of the search the exclusionary rule did not apply. Consequently, even if trial counsel had moved to suppress the evidence at issue, it was not suppressible under extant law. While the Supreme Court did hold that the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements constituted a search, it did not make this judgment until January 23, 2012. *Jones*, 132 S. Ct. at 949. Since Maryland courts follow case law precedent established by the Supreme Court, at the time the GPS tracker was installed, *United States v. Knotts* established the Fourth Amendment law that permitted the tracking of a vehicle by means of a mechanical device on public roadways. *Kelly*, 436 Md. at 425. At the time the Virginia police attached the GPS tracker, this law was binding in Maryland. *Id.*

> The Petitioner asks the court to vacate its convictions and sentences and to remand this matter for retrial so that he may have the right to file a pre-trial motion to suppress any and all evidence obtained from the warrantless placement and subsequent tracking of the GPS device on his vehicle in November of 2010. However, in applying the *Strickland* standard of review to the present case, the first prong of deficient counsel cannot be met. Review of ineffective assistance of counsel is highly deferential to counsel's strategic choices. The Petitioner must prove that counsel's professional judgment fell below the prevailing objective of a reasonable standard. *Strickland*, 466 U.S. at 688. In this case, counsel followed binding precedent and did not file a motion to suppress because under extant law, there was no suppressible evidence. While it may be true that if a motion was filed the issue could have been preserved for appellate review, the first prong of the *Strickland* test is not satisfied. Because both prongs must be proven in order to established [sic] ineffective assistance of counsel, this court cannot grant the petition for Post-Conviction relief.

ECF No. 14-11 at 7–11.

Judge Boynton reasonably examined the law regarding the tracking of vehicles that existed at the time of the GPS device placement and the search of Edmonds' car. Further, his analysis regarding Edmonds' failure to show that his attorney's performance was deficient constitutes a reasonable application of Supreme Court law under *Strickland*. The state court's determination survives scrutiny under § 2254(d). The Court finds no basis to overturn Judge Boynton's decision.

IV.   **CERTIFICATE OF APPEALABILITY**

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the

court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003). Because reasonable jurists would not find Edmonds's claim debatable, no certificate of appealability will issue. Denial of a Certificate of Appealability in the district court does not preclude Edmonds from requesting Certificate of Appealability from the appellate court.

## V. CONCLUSION

For the reasons stated herein, the court will deny and dismiss the petition with prejudice, and will not issue a Certificate of Appealability. A separate Order follows.

Date: June 26 , 2018

/s/
GEORGE J. HAZEL
United States District Judge